UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
SCOTT AUERBACH,

                     Plaintiff,                                 **R E P O R T    A N D**
                                                                 **RECOMMENDATION**
    -against-
                                                                  06 CV 4821 (RJD)
MARK AMIR,

                     Defendant.
-------------------------------------------------------X

On September 6, 2006, plaintiff Scott Auerbach filed this action against defendant Mark Amir, seeking to recover monies allegedly due under a promissory note, dated September 22, 2005 (the "Promissory Note"), that was executed in connection with the sale to defendant of plaintiff's physical therapy practice. On January 12, 2007, defendant filed an amended answer asserting five counterclaims, alleging, among other things, fraud in the inducement, misrepresentation, and breach of contract.

By Motion dated June 15, 2007, plaintiff seeks an order dismissing defendant's First and Second Counterclaims, alleging fraud and misrepresentation, respectively, on two grounds: 1) that the claims do not allege facts collateral to the Third Counterclaim for breach of contract; and 2) that the claims do not sufficiently plead fraud in accordance with the specificity requirements of Rule 9 of the Federal Rules of Civil Procedure.

By Order dated May 2, 2007, the motion to dismiss was referred to the undersigned to prepare a Report and Recommendation.

## FACTUAL BACKGROUND[1]

Plaintiff Scott Auerbach, a licensed physical therapist, was the sole owner and operator of nine physical therapy facilities operating under the name S.C.O.T.T. Physical Therapy, P.C. ("SCOTT"). (Compl. ¶¶ 7-8; Am. Ans. ¶¶ 31-33; Auerbach Aff. ¶ 3).[2] Mr. Auerbach also owned S&L Sunnyside Corp. ("S&L"), a real estate holding company that entered into leases for the SCOTT facilities. (Compl. ¶ 8; Am. Ans. ¶¶ 34-36; Auerbach Aff. ¶ 4). Defendant Amir, also a licensed physical therapist (Compl. ¶ 7), owned a physical therapy practice in Brooklyn under the name Madison Physical Therapy, P.C. (Amir Aff.[3] ¶ 3).

Beginning sometime in late 2004, plaintiff entered into negotiations with defendant to sell Auerbach's shares in SCOTT and S&L to Amir. (Auerbach Aff. ¶¶ 5-6; Amir Aff. ¶ 3). In April 2005, Amir forwarded a letter of intent offering to purchase both entities for $2.25 million. (Amir. Aff. ¶ 4). Amir alleges that the offer was subject to certain prerequisites, including the right of

---

[1] The facts recited herein are taken from the parties' respective pleadings and from affidavits submitted in connection with the motion to dismiss. The Court notes that in reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all well-pleaded facts as true and must limit its consideration to the pleadings and any attached exhibits thereto. See Osan Ltd. v. Accenture LLP, 454 F. Supp. 2d 46, 51 (E.D.N.Y. 2006) (citing Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., 32 F. 3d 697, 699-700 (2d Cir. 1994); and Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991)). Here, the Court has referred to the parties' respective affidavits and memoranda of law solely to the extent that they provide background to the pleadings at issue, but the facts relied upon in rendering this Report are limited to the facts specifically alleged in the defendant's Amended Answer with Counterclaim.

[2] Citations to "Compl." refer to the plaintiff's Complaint, filed on September 6, 2006; citations to "Am. Ans." refer to defendant's Amended Answer with Counterclaim, filed on January 12, 2007; and citations to "Auerbach Aff." refer to the Affidavit of Scott Auerbach, dated June 15, 2007.

[3] Citations to "Amir Aff." refer to the Affidavit of Mark Amir, dated July 2, 2007.

Amir to review accurate records of Auerbach's businesses. (Id. ¶ 8). Another condition required Auerbach to continue to operate the businesses in substantially the same condition without any material change. (Id.)

On September 22, 2005, the parties executed a Stock Purchase Agreement ("SPA"), under which Amir purchased all of Auerbach's shares in SCOTT and S&L for $2.25 million. (Compl. ¶ 7; Am. Ans. ¶¶ 37, 42; Amir Aff. ¶ 29; Auerbach Aff. ¶ 13, Ex. H). Amir made a down payment in cash of $1.5 million obtained through a loan with Signature Bank, and the parties executed a separate Promissory Note under which Amir was to pay the remaining $750,000 owed over a period of time, with the first payment of interest and principal to be made on October 10, 2006 ("Promissory Note" or "Note"). (Am. Ans. ¶¶ 42, 43; Amir Aff. ¶ 29; Auerbach Aff. ¶¶ 14, 15, Ex. I). The Promissory Note provided that the remaining payments would be due each month thereafter until September 10, 2010. (Auerbach Aff. ¶ 15, Ex. I). The Promissory Note also provided that upon default in a payment, Auerbach had the option to immediately accelerate the full amount of the Note and any accrued interest. (Id., Ex. I).

In the Amended Answer with Counterclaim, defendant alleges that "prior to the execution of the SPA," plaintiff made "various oral and/or written assurances with respect to [SCOTT] . . . or S&L . . . ." (Am. Ans. ¶ 38). Indeed, the parties agree that during the months prior to the closing on September 22, 2005, Auerbach provided Amir with various records of SCOTT and S&L. (Auerbach Aff. ¶ 11; Amir Aff. ¶ 9). Auerbach claims that defendant was given "unrestricted access" to plaintiff's facilities, employees, and records (Auerbach Aff. ¶¶ 6-7, 11), and that, in addition, Signature Bank conducted its own review of the plaintiff's records in connection with Amir's financing application. (Id. ¶ 8). Amir disputes the nature of the access provided and

3

contends that his representatives were "severely limited" in their access to the facilities and patient records. (Def.'s Opp.[4] at 3).

According to Amir, among the records that were disclosed by plaintiff prior to the execution of the SPA were representations that: 1) each of the subleases held by S&L was legal, binding, and in full force and effect; 2) there had been "no actual or threatened adverse change in the value, financial condition, prospects or results of operation" of either SCOTT or S&L; (3) the volume of patients treated by and referred to SCOTT was not materially altered prior to the date of the closing; (4) each patient had been timely and properly billed; (5) the employees were duly licensed; and (6) there were valid receivables in the amount of approximately $3,681,752.75 as of the closing date. (Am. Ans. ¶ 38). Specifically, Amir alleges in his affidavit that prior to the closing, he was provided with a facsimile, dated July 29, 2005, which contained a summary of the number of patients treated at each of the SCOTT facilities through December 2004. (Amir Aff. ¶ 14, Ex. C). According to Amir, after the execution of the SPA, he discovered that plaintiff had been giving gifts and/or cash to doctors in exchange for referrals, and that beginning sometime in June 2005, plaintiff had "ceased or materially reduced efforts to obtain referral of patients from doctors by legitimate, legal and professional methods." (Am. Ans. ¶¶ 63-64). Defendant contends that this information was a "materially adverse change" that was withheld from Amir. (Def.'s Opp. at 4).[5]

---

[4] Citations to "Def.'s Opp." refer to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss, dated July 6, 2007.

[5] Although not mentioned in the Amended Answer, defendant contends that at the time of the closing, plaintiff provided a newly revised summary of patients treated that allegedly showed a significant decline during the prior month of August. (Id.) This summary, which was

Defendant further alleges that prior to the closing, plaintiff provided an "Insurance Aging Report" to Amir which represented that SCOTT held good accounts receivable in the amount of $3,681,752.75, of which $2,436,306.23 was listed under a column titled "Not Subm," which plaintiff has defined as "claim forms sent to co-insurers either by primary insurers, such as Medicare, or by [SCOTT m]anually." (Amir Aff. ¶ 16, n.1; Am. Ans. ¶ 53). According to Amir, Auerbach did not submit the back-up patient records to substantiate this number but orally represented the accuracy of these figures. (Amir Aff. ¶ 17). Amir claims that he relied on this representation in continuing the negotiations to finalize the transaction. (Id.) According to defendant, the representation as to the valuable accounts receivable was "grossly inflated, misleading and meant to deceive Defendant," and that plaintiff "knew or should have known" of the false and misleading nature of this information. (Am. Ans. ¶¶ 54-56).

Amir further alleges that there were fraudulent misrepresentations made regarding the inventory of equipment owned by SCOTT. (Amir Aff. ¶¶ 18-21). Specifically, Amir alleges that on or about July 1, 2005, plaintiff provided defendant with an inventory of assets owned by SCOTT, including exercise equipment, furniture, office supplies, and related physical therapy products. (Am. Ans. ¶¶ 57-58). Amir alleges that it was not until the closing that he discovered that most of the equipment in the facilities was not actually owned by SCOTT. (Amir Aff. ¶ 21). Defendant alleges that not only did plaintiff know that these representations regarding the inventory were false, but that they were made with the intent to deceive defendant. (Am. Ans. ¶¶ 59-60).

---

contained "within the plethora of exhibits attached to the eventual agreement," further demonstrates this "materially adverse change." (Id.)

In addition to fraudulently misrepresenting the status of patient services, accounts receivable, and inventory, Amir alleges that plaintiff also misrepresented the license status of the SCOTT employees. (Id. ¶¶ 69-70). Amir alleges that between June 2005 and the date of the closing, plaintiff provided defendant with a list of the physical therapists and physical therapist assistants who were employed by SCOTT during 2004 and 2005. (Id. ¶ 68). According to defendant, plaintiff represented that each of these therapists was fully licensed by the State of New York. (Id. ¶ 69). Only after the closing did defendant learn that some of the physical therapists who had been represented as being licensed to practice were only temporarily licensed or not licensed at all. (Id. ¶ 70; Amir Aff. ¶¶ 24-26). Defendant alleges that plaintiff knew or should have known that his representations regarding the licensing status of the therapists were false and that the misrepresentations were made to deceive defendant. (Am. Ans. ¶¶ 71-72).

Finally, Amir alleges that plaintiff made fraudulent representations about the status of the lease agreements to which S&L was party. (Id. ¶ 74). According to Amir, Auerbach represented that S&L and/or SCOTT were in "exclusive use and possession" of the spaces referenced in these agreements, and that S&L was current and complete on all rents collected or due. (Id. ¶¶ 75-76). Amir contends, however, that plaintiff failed to disclose that he permitted tenants or sub-tenants to pay less than the stated rent in exchange for patient referrals or gifts. (Id. ¶¶ 79-80). Defendant asserts that Auerbach knew or should have known that his representations regarding the lease agreements were false and that they were made to deceive defendant. (Id. ¶¶ 77, 81).

Amir contends that following the closing, he expended all of his time and energy to manage the new businesses. (Amir Aff. ¶ 30). However, by May 2006, Amir concluded that he had been defrauded prior to the execution of the SPA and he wrote a letter to plaintiff, dated May 18, 2006,

outlining the fraud and breach by Auerbach. (Id. ¶¶ 31-32, Ex. J).

On September 6, 2006, just one month prior to the commencement of Amir's payment obligations under the Note, Auerbach filed suit for anticipatory breach of contract,[6] alleging that Amir had "unequivocally confirmed his intention to disregard his obligations under the [SPA] and the Promissory Note." (Id. at 4; Auerbach Aff. ¶ 18). In his January 12, 2007 Amended Answer with Counterclaim, defendant asserted five counterclaims.

Auerbach now moves to dismiss the defendant's counterclaims for fraud and misrepresentation, arguing that because the fraud claims are based on the same factual allegations as defendant's counterclaim alleging breach of contract, the fraud claims must be dismissed, and that given defendant's "unfettered, unrestricted" access to documents prior to the execution of the SPA, he should be precluded from claiming fraud or misrepresentation. (Pl.'s Mem. at 11-12). Plaintiff further contends that defendant has failed to plead these claims with the specificity required by Rule 9 of the Federal Rules of Civil Procedure. (Id. at 13).

## DISCUSSION

A. Standards

When deciding a motion to dismiss a complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court should dismiss a pleading only if it "appears beyond doubt that the [defendant] can prove no set of facts in support of his claim which would

---

[6]Plaintiff notes that now there has been an actual breach since defendant has made no payments under the Note. (Memorandum of Law in Support of Plaintiff's Motion to Dismiss, dated June 15, 2007 ("Pl.'s Mem."), at 4 n.2).
7

entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See International Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 71-72 (2d Cir. 1995) (per curiam). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995), cert. denied, 519 U.S. 808 (1996).

The Second Circuit has stated that in deciding a Rule 12(b)(6) motion, a court must "accept as true the factual allegations of the [counterclaim], and draw all inferences in favor of the pleader." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). See Scheuer v. Rhodes, 416 U.S. at 236. In addition, the court must give defendant's claims "a liberal construction." Johnson v. New York City Transit Auth., 639 F. Supp. 887, 891 (E.D.N.Y. 1986) (citing Haines v. Kerner, 404 U.S. 519 (1972)), aff'd in part and vacated in part on different grounds, 823 F.2d 31 (2d Cir. 1987). After construing defendant's claims liberally, a court may grant dismissal "only if it is clear that the [pleader] would not be entitled to relief under any set of facts that could be proved consistent with the allegations." Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997); see Olkey v. Hyperion 1999 Term Trust, Inc., 98 F.3d 2, 5 (2d Cir. 1996), cert. denied, 520 U.S. 1264 (1997).

B. Fraud and Contract Claims

Plaintiff first contends that defendant's counterclaims for fraud and misrepresentation must be dismissed for the simple reason that under New York law, fraud claims are not actionable where the only fraud alleged relates to a breach of contract. (Pl.'s Mem. at 7).

This Court has previously recognized that "[u]nder New York law, no fraud claim is

8

cognizable if the facts underlying the fraud relate to the breach of contract." Volga-Inconsult-Invest v. United Mgmt. Corp., No. 93 CV 4229, 1997 WL 139005, at *5 (E.D.N.Y. Mar. 4, 1997) (citing Middle Country Cent. Sch. Dist. v. J.F. O'Healy Constr. Corp., 230 A.D.2d 777, 778, 646 N.Y.S.2d 379, 380 (2d Dep't 1996); Trusthouse Forte (Garden City) Mgmt., Inc. v. Garden City Hotel, Inc., 106 A.D.2d 271, 272, 483 N.Y.S.2d 216, 218 (1st Dep't 1984)). In Mastropieri v. Solmar Constr. Co., the court clearly stated that: "It is well settled that a cause of action to recover damages for fraud will not arise when the only fraud relates to a breach of contract." 159 A.D. 2d 698, 700, 553 N.Y.S.2d 182, 189 (2d Dep't 1990); see also Edwil Indus., Inc. v. Stroba Instruments Corp., 131 A.D.2d 425, 425, 516 N.Y.S.2d 233, 233 (2d Dep't 1987); Spellman v. Columbia Manicure Mfg. Co., Inc., 111 A.D.2d 320, 322, 489 N.Y.S.2d 304, 307 (2d Dep't 1985). In order to assert a separate claim of fraud, the party must plead misrepresentation on matters separate or collateral to the contractual obligations, see Volga-Inconsult-Invest v. United Mgmt. Corp., 1997 WL 139005, at *5; see also Papa's-June Music, Inc. v. McLean, 921 F. Supp. 1154, 1161 (S.D.N.Y. 1996); Sforza v. Health Ins. Plan of Greater N.Y., Inc., 210 A.D. 2d 214, 214-15, 619 N.Y.S.2d 734, 736 (2d Dep't 1994), allege a duty separate from the contractual duty to perform, see Papa's-June Music, Inc. v. McLean, 921 F. Supp. at 1161, or demonstrate special damages as a result of the alleged misrepresentations that are not subject to recovery as contract damages. See id.; Bezuszka v. L.A. Models, Inc., No. 04 CV 7703, 2006 WL 770526, at *12 (S.D.N.Y. Mar. 24, 2006).

Plaintiff contends that because defendant's counterclaims for fraud and misrepresentation and his breach of contract counterclaim rest upon the same set of allegations – namely, that plaintiff fraudulently represented certain facts pertaining to the value of SCOTT – the fraud claims

must be dismissed. (Pl.'s Mem. at 8). Plaintiff further contends that defendant has not alleged any special relationship between Auerbach and Amir that would impose a separate duty on plaintiff independent of the parties' obligations under the SPA, nor has he alleged any special damages that would entitle him to receive anything more than contract damages. (Id. at 9). Thus, plaintiff urges the Court to dismiss the two counterclaims based on fraud and misrepresentation.

Defendant contends that in this case, he has alleged a separate claim of "fraudulent inducement" which is based on false representations made by Auerbach, prior to the execution of the SPA, to induce Amir to purchase SCOTT and S&L. (Def.'s Opp. at 7-8).

Where a misrepresentation of a present fact is made to induce a party to enter into a contract, it is considered collateral to the contract and has been held sufficient to support a separate claim in fraud. See Regal Custom Clothiers, Ltd. v. Mohan's Custom Tailors, Inc., No. 96 CV 6320, 1997 WL 370595, at *6 (S.D.N.Y. July 1, 1997); Volga-Inconsult-Invest v. United Mgmt. Corp., 1997 WL 139005, at *5 (holding that while New York law does not recognize an action for fraudulent breach of contract, misrepresentations of a present fact state a claim for fraud in the inducement). "'[F]raudulent inducement claims and breach of contract claims relate to two different actions by a defendant at two different times.'" Topps Co. v. Cadbury Stani S.A.I.C., 380 F. Supp. 2d 250, 264 n.17 (S.D.N.Y. 2005) (internal citation omitted); see also Osan Ltd. v. Accenture LLP, 454 F. Supp. 2d at 54. The New York Court of Appeals has distinguished between claims of fraudulent inducement and breach of contract claims. See Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc., 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 89 (1986) (noting that a claim alleging "'a representation of present fact, not of future intent' . . . collateral to, but which was the inducement for the contract," is not duplicative of a claim of breach of contract) (internal

10

citations omitted); Citibank, N.A. v. Plapinger, 66 N.Y.2d 90, 495 N.Y.S.2d 309 (1985).

In order to properly plead a claim of fraudulent inducement, the New York courts have required that there be an allegation that the party knowingly made a "false representation of a material fact and there must be detrimental reliance thereon." Osan Ltd. v. Accenture LLP, 454 F. Supp. 2d at 52. Specifically, the courts have stated that the elements of a fraudulent inducement claim include: "(i) a representation of material fact; (ii) which was untrue; (iii) which was known to be untrue or made with reckless disregard for the truth; (iv) which was offered to deceive another or induce him to act; and (v) which that other party relied on to its injury." Langenberg v. Sofair, No. 03 CV 8339, 2006 WL 3518197, at *4 n.3 (S.D.N.Y. Dec. 7, 2006) (citing Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 580 (2d Cir. 2005)).

In alleging a false representation, the party may allege either an affirmative misrepresentation or an omission of a material fact, and there must be "reasonable" reliance on that misrepresentation. Osan Ltd v. Accenture LLP, 454 F. Supp. 2d at 52. See also Wurtsbaugh v. Banc of Am. Secs. LLC, No. 05 CV 6220, 2006 WL 1683416, at *6 (S.D.N.Y. June 20, 2006). In addition, the party must allege that it was "induced to enter in a contract by way of a misrepresentation." Osan Ltd. v. Accenture LLP, 454 F. Supp. 2d at 52. See also Bridgestone/Firestone Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996). Thus, where the fraud claim is based on misrepresentations made "before the formation of" the contract that induced the party to enter into the contract, a separate claim will lie. Cohen v. Koenig, 25 F.3d 1168, 1173 (2d Cir. 1994).

Defendant alleges that prior to entering into the SPA, plaintiff knowingly made false representations designed to induce defendant to enter into the SPA. (Def.'s Opp. at 7). The

Counterclaim specifically alleges that plaintiff made various statements prior to the execution of the SPA regarding the nature of the business, the inventory, facilities and personnel of SCOTT that were false, that plaintiff knew were false and that defendant reasonably relied upon in deciding to pursue the contract. Moreover, even though plaintiff argues that defendant will be unable to prove detrimental reliance because defendant was provided with the books and records of plaintiff prior to the date of execution (Pl.'s Mem. at 9-10), this is merely an issue of fact for the trier of fact to consider. At this point, the Court concludes that defendant's allegation that he relied on the accuracy of the information provided by the plaintiff and that he based his evaluation of the purchase on that information, which he alleges was false, satisfies the requirement that he has alleged facts collateral to the contract claims.

C. Pleading Standards

Plaintiff argues in the alternative that defendant's counterclaims based on fraud and misrepresentation must be dismissed on the ground that they fail to satisfy the heightened pleading requirement of Rule 9 of the Federal Rules of Civil Procedure.

Rule 9(b) is an exception to the liberal pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, and requires that a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); see Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir. 1986); Tuscano v. Tuscano, 403 F. Supp. 2d 214, 221 (E.D.N.Y. 2005). Specifically, "'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d

Cir. 2006) (quoting Mills v. Polar Molecular Corp., 12 F.3d at 1175). Moreover, "[a]llegations of fraud cannot ordinarily be based 'upon information and belief,' except as to 'matters peculiarly within the opposing party's knowledge.'" Luce v. Edelstein, 802 F.2d at 54 n.1 (internal citation omitted).

"Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Thus, under Rule 9, even though the requisite intent of the defendant need not be alleged with "'great specificity,'" see Cohen v. Koenig, 25 F.3d at 1173 (internal citation omitted), the "actual fraudulent statements or conduct and the fraud alleged must be stated with particularity." Chill v. Gen. Elec. Co., 101 F.3d 263, 267 (2d Cir. 1996) (internal citations omitted). Furthermore, a plaintiff must allege facts that give rise to a "strong inference of fraudulent intent" by either "alleging facts to show that defendants had both motive and opportunity to commit fraud, or . . . by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).

Plaintiff complains that defendant alleges in "conclusory fashion" that plaintiff fraudulently represented the value of the SCOTT receivables, inventory, referral history, licensing status, use of the rental space and rents paid by tenants of S&L. (Pl.'s Mem. at 13). Plaintiff argues that with respect to the claim that the Insurance Aging Report was grossly inflated, defendant has failed to identify the manner in which the Report was inflated, nor has he identified the date or location or nature of the allegedly fraudulent statements made by Mr. Auerbach regarding the Insurance Aging Report. (Id.) Similarly, with respect to the claims as to inventory, the referral of patients, and the licensing of the therapists, plaintiff argues that the counterclaim fails to identify with sufficient

13

specificity the date that fraudulent statements were made and the manner in which the statements were fraudulent. (Id. at 14-15). To the extent that defendant has identified a range of four months in which the statements were alleged to have been made, plaintiff argues that the allegations fail to satisfy the specificity requirements of Rule 9. (Id.)[7] Finally, plaintiff argues that defendant's allegations regarding the misrepresentations allegedly made in connection with S&L's collection of rents due and owing fails to state a claim because it does not specify what statements made by plaintiff were false. (Id. at 15).[8]

The Court finds that, accepting the allegations in defendant's Amended Answer and Counterclaim as true and drawing inferences in his favor, Amir has satisfied the pleading requirements of Rule 9(b). As an initial matter, the Court notes that defendant has alleged one

---

[7]Plaintiff also points out that insofar as the counterclaim alleges that there was false information provided regarding the physical therapists' licensing status, the documentary evidence contradicts defendant's claims. (Id. at 15 n.7). Specifically, plaintiff notes that the list provided to defendant contains information identifying which therapists had temporary licenses. (Id.) The Court notes that while this may in fact be the case, on a motion to dismiss, the Court must accept the allegations stated in the Counterclaims as true, see Mills v. Polar Molecular Corp., 12 F.3d at 1174, and may not consider evidence extrinsic to the pleadings unless the motion is converted to a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. See Osan Ltd. v. Accenture LLP, 454 F. Supp. 2d at 51. In this case, the Court declines to convert the motion and therefore has not considered the evidentiary arguments made by plaintiff.

[8]Plaintiff further notes that the district court commented that since defendant is in actual possession of the leases, he could enforce the terms of the leases and collect the rent. (Pl.'s Mem. at 15, n.8). The Court respectfully notes that while defendant has this option available to him, the ability to collect all the rent due is collateral to the issue of whether plaintiff misrepresented the value and nature of the leases, thus inducing defendant to complete the purchase of S&L. Indeed, because a number of the tenants were alleged to have been given reduced rental rates in exchange for patient referrals, enforcement of the lease terms may adversely impact on the defendant's business if the tenants, in response, cease their referrals. According to defendant, a reduction in referrals has already occurred to some extent. (See Am. Ans. ¶¶ 63-64).

14

counterclaim of fraud, in which he has detailed numerous representations by plaintiff as to the value of the businesses that induced defendant to purchase them. With respect to at least three of these detailed representations, defendant has alleged the specific ways in which plaintiff did not provide accurate information. (See id. ¶¶ 61-67 (patient referrals), 68-72 (employee licensing status), 73-81 (lease space[9])). The fact that defendant did not specify in each and every instance to what extent the representations listed in the Amended Answer and Counterclaim were false does not mean that as a whole, defendant has failed to demonstrate how plaintiff's alleged misrepresentations amount to fraudulent inducement to contract. Furthermore, defendant's affidavit and memorandum of law contain additional detail regarding how plaintiff's representations relating to SCOTT's inventory and accounts receivable are alleged to be false. (See Amir Aff. ¶¶ 16-21; Def.'s Opp. at 3-4). Although defendant does not state the exact day and time that these representations were made, it is clear that a series of statements were made over the finite period of time during which the SPA was negotiated. The four-month period set forth is more than sufficient to put plaintiff on notice of the content of defendant's allegations. Though the Court could recommend dismissal with leave for defendant to amend his Counterclaim, see Luce v. Edelstein, 802 F.2d at 56, the Court finds it unnecessary given the specificity with which defendant has detailed the other alleged fraudulent misrepresentations and the ways in which he determined them to be fraudulent. The heart of defendant's Counterclaim is that plaintiff misrepresented the value of the business overall, and defendant has provided sufficient detail in his Counterclaim to satisfy this prong of Rule 9(b).

---

[9]The Court finds that, contrary to plaintiff's contention, defendant has specified which statements pertaining to the lease space were false. (See id. ¶¶ 74-76).

15

Furthermore, defendant has adequately alleged facts to support a finding of scienter in that he has demonstrated that plaintiff had "both motive and opportunity to commit fraud." Shields v. Citytrust Bancorp, Inc., 25 F.3d at 1128. The Second Circuit has noted that "'[m]otive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged.'" Chill v. Gen. Elec. Co., 101 F.3d at 268 (internal citation omitted). The motive to complete the sale of SCOTT and S&L at the highest possible price is a specific and "concrete" benefit that would have been realized by the concealment of any weaknesses or adverse changes in the operation of the businesses.

Accordingly, it is respectfully recommended that plaintiff's motion be denied.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b); Small v. Secretary of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
January 9, 2008

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge